826 So.2d 641 (2002)
Julie HERNANDEZ and Berdelio Hernandez, individually and on behalf of their minor child, Chris Lee Hernandez,
v.
CHALMETTE MEDICAL CENTER a/k/a UHS De La Ronde, Inc.
No. 2001-CA-0074.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 2002.
*642 R. Ray Orrill, Jr., Leslie A. Cordell, W. Christopher Beary, Lyn M. Curlin, Orrill, Cordell & Beary, L.L.C., New Orleans, LA, For Plaintiffs/Appellees.
C. William Bradley, Jr., Nicole Duarte Martin, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellant, Gregory A. Redmann, M.D.
J. Michael Daly, Jr., Law Offices Of Robert E. Birtel, Metairie, LA, for Defendant/Appellant, Charles Lavis, M.D.
George Cain, Ann Marie LeBlanc, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Intervenor/Appellant, Patients' Compensation Fund.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR.
PATRICIA RIVET MURRAY, Judge.
Defendants, Dr. Gregory Redmann and Dr. Charles Lavis, and intervenor, the Louisiana Patient's Compensation Fund ["PCF"], appeal the trial court's judgment awarding damages to plaintiffs in this medical malpractice action. These defendants and the PCF also jointly assert in this court an exception of prescription.

FACTS
On December 30, 1993, nine-year-old Chris Hernandez was brought to the Chalmette Medical Center emergency room complaining of pain in his left leg resulting from a football injury. He was examined by Dr. Redmann, who ordered x-rays. After the x-ray films were viewed by Dr. Lavis, a radiologist, Chris was diagnosed with a hip and leg contusion and was sent home approximately three hours after he had arrived at the hospital. The next morning, Dr. Lavis reviewed Chris's x-rays in order to prepare his formal interpretation, and noticed for the first time an abnormality in the hip film. Dr. Lavis informed Dr. Alfred Friedrichsen, the emergency room physician on duty that day, who immediately called the Hernandez family and requested that they bring Chris back to the hospital. When Chris arrived that morning, he underwent repeat x-rays and a CT scan of his left hip and pelvis. Following these tests, Chris was diagnosed with a dislocated hip. After consulting by telephone with Dr. Bennett, a pediatric orthopedic surgeon, *643 Dr. Friedrichsen attempted to reduce the hip. On his second attempt, after Chris was given a second dose of sedatives, Dr. Friedrichsen succeeded, and Chris was discharged with instructions to stay on complete bed rest with abduction pillows between his legs. Four days later, Chris saw Dr. Bennett at Children's Hospital, who concluded that the reduction was only a pseudo-reduction, which meant that something, presumably a bone fragment, was interposed between the socket and the hip. In an attempt to correct the situation, Chris underwent two surgical procedures: an arthrogram on January 4, which was not successful; and a femoral arthrotomy on January 10, 1994, in which the hip was opened up and the piece of labrum that had been preventing a complete reduction was flipped back to its proper position. In March, 1994, Dr. Bennett diagnosed Chris with avascular necrosis, a condition that results from disruption and corresponding lack of blood supply to the femoral head. Chris was placed in a complete body cast for three months and then on weight-bearing crutches. According to Dr. Bennett, the damage to Chris's hip will almost certainly require future surgery (arthrodesis and/or an artificial hip).
Mr. and Mrs. Hernandez filed a proposed complaint of medical malpractice with the PCF against Chalmette Medical Center [CMC] and Dr. Friedrichsen on December 28, 1994, within one year of Chris's initial examination in the emergency room. The instant civil action was instituted against CMC on December 28, 1995. On September 11, 1996, plaintiffs filed with the PCF a proposed complaint of medical malpractice against Dr. Redmann. On December 17, 1996, a medical review panel exonerated CMC and Dr. Friedrichsen. On September 15, 1997, within the statutorily-provided time frame, plaintiffs filed their first supplemental and amending petition, adding Dr. Friedrichsen as a defendant. On September 30, 1997, plaintiffs filed their proposed claim of malpractice against Dr. Lavis. In July, 1998, a second medical review panel concluded that Dr. Redmann and Dr. Lavis had breached the applicable standard of care. On September 16, 1998, plaintiffs filed their second supplemental and amending petition, adding Dr. Redmann and Dr. Lavis as defendants. On May 6, 1999, plaintiffs dismissed CMC from the lawsuit following settlement in the amount of $5,000, and reserved their rights against the remaining defendants.
A bench trial was held February 2-3, 2000. On April 24, 2000, the trial court rendered judgment in favor of plaintiffs against Dr. Redmann in the sum of $100,000, against Dr. Lavis in the sum of $100,000, and against those same defendants in solido for costs; the court also rendered judgment in favor of Dr. Friedrichsen, dismissing plaintiffs' claims against him. In written reasons for judgment, the court noted that both Dr. Redmann and Dr. Lavis were negligent in their treatment of Chris Hernandez, finding them to be 100% at fault in causing his injuries. The court also noted that because the Hernandez's damages exceeded the statutory cap, the award was the maximum amount allowable by law. Finally, the court concluded that plaintiffs had failed to meet their burden of proving that Dr. Friedrichsen had breached the standard of care.
In an amended judgment issued May 26, 2000 in response to plaintiffs' motion for new trial, the trial court increased the damages awarded against Dr. Redmann and Dr. Lavis to $500,000 each, with the stipulation that each of them would not be personally liable for any amount in excess of $100,000; the court also awarded to plaintiffs against the PCF medical expenses in the amount of $14, 234.79, as *644 well as future medical care and related benefits for the remainder of Chris Hernandez's life.
Following the judgment, the PCF intervened for purposes of appeal. Dr. Redmann, Dr. Lavis and the PCF timely filed a suspensive appeal. Plaintiffs neither answered the appeal nor filed an appeal in their own right. On October 31, 2001, prior to the case being submitted for decision, the three appellants jointly filed an exception of prescription in this court, which the plaintiffs opposed. The exception was argued in February, 2002, in conjunction with the oral argument on the merits, and was briefed separately.

EXCEPTION OF PRESCRIPTION
Consideration of the exception must pretermit our consideration of the merits of the appeal. We first note that plaintiffs' action against Dr. Redmann and Dr. Lavis appears prescribed on its face. Prescription for medical malpractice claims is governed by La. R.S. § 9:5628, which provides that the action must be filed within one year from the date of the alleged act, omission or neglect, or within one year from its discovery, but in no event more than three years from the date of the alleged act of malpractice. Additionally, La. R.S. § 40:1299.47 provides that all claims against qualified health care providers must be reviewed by a medical review panel, and the filing of the request for review suspends the time within which suit must be instituted until ninety days following the notification, by certified mail, to the claimant of the decision of the medical review panel. Moreover, the timely filing of a request for review suspends the running of prescription against all those who are joint and solidary obligors and/or joint tortfeasors with the timely sued party. La. R.S. § 40:1299.47 A 2(a). If, however, it is determined after trial that there is no joint or solidary obligation, prescription may be successfully asserted by an untimely sued defendant who is cast in judgment. Adams v. Dupree, 94-2353, pp. 3-4 (La.App. 4 Cir. 10/12/95), 663 So.2d 433, 435; Gioustover v. Progressive American Ins. Co., 561 So.2d 961, 964 (La.App. 4th Cir.1990); Spott v. Otis Elevator Co., 601 So.2d 1355, 1359 (La.1992).
Applying these principles to the instant case, it becomes clear that the only timely sued defendants are CMC and Dr. Friedrichsen. The exoneration of Dr. Friedrichsen after trial therefore provided the two untimely sued defendants, Dr. Redmann and Dr. Lavis, with grounds to assert prescription in the appellate court, because the filing of suit against a non-solidary obligor could not have suspended the running of prescription as to them.
With regard to the filing of an exception of prescription in the appellate court, Article 2163 of the Louisiana Code of Civil Procedure states:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.
Prior to the docketing of this case for hearing in the appellate court,[1] plaintiffs filed a motion to remand for trial of the prescription issue.[2] Although the First Circuit has held that a remand pursuant to *645 article 2163 is compulsory when demanded by the plaintiff (Blanchard v. Southern Pacific Transp. Co., 93-1155 (La.App. 1 Cir. 4/8/94), 635 So.2d 742, 744), this court and other circuits have held that such a remand is discretionary. See: Robin E. Owens & Associates v. Booth, 98-0613, pp. 8-9 (La.App. 4 Cir. 2/24/99), 729 So.2d 1096, 1100; Bibbins v. Boh Bros. Const. Co., 98-172, pp. 2-3 (La.App. 5 Cir. 7/28/98), 716 So.2d 467, 468; Willett v. Premier Bank, 97-187, pp. 9-10 (La.App. 3 Cir. 6/4/97), 696 So.2d 196, 201; Carmouche v. City of Marksville, 94-122, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 392, 393. Generally, these courts have held that remand is not necessary when the merits of the prescription issue can be determined from the record on appeal (Owens, supra), but is appropriate whenever the interests of justice would be best served by a remand for a full hearing on prescription. Bibbins, supra; Willett, supra; Carmouche, supra.
In the instant case, prescription was clearly not an issue at trial; it did not become one until Dr. Friedrichsen was exonerated by the trial court's judgment. There was no evidence presented as to the liability of the settling defendant, CMC, and the trial clearly did not consider the issue of CMC's liability. Because the judge plaintiffs neither appealed the judgment nor filed an answer to the appeal, the non-liability of Dr. Friedrichsen, which the trial court clearly determined, is a final judgment and cannot be revisited.
Appellants' argument that the issue of prescription can be determined from the record on appeal is not persuasive. When, as here, the action appears prescribed on its face, the burden shifts to the plaintiff to prove the suspension or interruption of the prescriptive period, and if the plaintiff's basis for claiming interruption is solidary liability between two or more parties, then the plaintiff bears the burden of proving that solidary relationship. Younger v. Marshall Industries Inc., 618 So.2d 866, 869 (La.1993). Neither are we persuaded by plaintiffs' argument that prescription was interrupted because the dismissal of CMC, made after a general appearance by the defendants, does not qualify as a voluntary dismissal of the action under former Civil Code article 3463. That article, which was amended in 1999, provided that an interruption of prescription resulting from the filing of suit continues as long as the suit is pending, but the interruption is considered never to have occurred if the plaintiff abandons or voluntarily dismisses the action. Cases interpreting the article held that a dismissal made after a general appearance by the defendant did not qualify as a voluntary dismissal.[3] See, e.g.: Adams v. Dupree, 94-2353 (La.App. 4 Cir. 1/26/96), 663 So.2d 433. However, neither the Code article nor the cases relied upon by plaintiffs address the issue of whether a solidary obligation exists between a settling party, whose liability has not been considered at trial, and a defendant found to be liable. In the case primarily relied upon by plaintiffs, Adams v. Dupree, supra, this court, citing article 3463, reversed the district court's pretrial dismissal of *646 plaintiff's action against defendant KCS as prescribed and remanded for trial; in doing so, however, the court specifically noted: "Of course, if after trial, there is no solidary liability between KCS and [settling defendant] Dupree, there was no interruption of prescription, and KCS's exception can be reurged." Id., p. 8, 663 So.2d at 437 n. 6.
In the instant case, plaintiffs did not have the opportunity to introduce evidence as to the solidary obligation between CMC and the other defendants because prescription was not asserted, and did not become an issue, until after trial.[4] Under the circumstances, we conclude that the interests of justice are best served by remanding the case to the trial court for a hearing on the exception of prescription.

CONCLUSION
Accordingly, we remand this matter to the district court and order that court to conduct a full evidentiary hearing on the exception of prescription asserted in this court by Dr. Redmann, Dr. Lavis, and the PCF. We defer consideration of the merits of this appeal until the trial court has rendered its decision. Proceedings in the appellate court are stayed, and this appeal is held open until such time as the district court renders judgment on the exception of prescription and the appellants either move to dismiss this appeal or to have this court resume consideration of this appeal for the purpose of rendering a decision on the merits.[5]
REMANDED WITH ORDER.
NOTES
[1] The case was docketed on December 20, 2001, for hearing on February 4, 2002.
[2] The motion was filed November 8, 2001, and was denied without written reasons by another panel of this court on December 17, 2001. It is unclear whether that panel reviewed the record prior to deciding the motion. Neither party argues that the "law of the case" doctrine applies to this prior ruling. However, this is a discretionary doctrine that is inapplicable in cases where the prior decision was palpably erroneous or the application of the doctrine would result in manifest injustice. Willett v. Premier Bank, 97-187, p. 11 (La.App. 3 Cir. 6/4/97), 696 So.2d 196, 202. As our review of the record discloses no evidence on the prescription issue, it would be unjust to apply the law of the case doctrine in this instance.
[3] The 1999 amendment of article 3463 legislatively overruled this interpretation
[4] Prescription was asserted by Dr. Redmann in his answer to plaintiffs' petition, but was never briefed or set for hearing. Dr. Lavis and the PCF asserted the exception for the first time in the appellate court.
[5] An appeal of the district's court's decision on prescription, if such is taken, will be considered for consolidation with the instant appeal.